FILED
CLERK

1/4/2013 3:17 pm

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
---------------------------------------------------------X
MICHAEL CATANIA,

                  Plaintiff,

        -against-

NORMA HERBST,

                  Defendant.
---------------------------------------------------------X
NORMA HERBST,

                  Third-Party Plaintiff,

        -against-

UNITED STATES POSTAL SERVICE,
PATRICK R. DONAHOE, Post Master General
Executive Officer both individually and in his
official capacity, and John Doe and/or Jane Doe.

                  Third-Party Defendants.
---------------------------------------------------------X

**ORDER**
12-cv-1840 (ADS)(ARL)

<u>**APPEARANCES:**</u>

**Zabell & Associates, P.C.**
*Attorneys for the Plaintiff*
4875 Sunrise Highway
Suite 300
Bohemia, NY 11716
      By: Saul D. Zabell, Esq., Of Counsel

**Ranni Law Firm**
*Attorneys for the Defendant and Third-Party Plaintiff Norma Herbst*
148 North Main Street
Florida, NY 10921
      By:  Joseph James Ranni, Esq., Of Counsel

**Loretta A. Lynch, United States Attorney**
**for the Eastern District of New York**
*Attorneys for the United States of America*
610 Federal Plaza
Central Islip, NY 11722
      By: James Halleron Knapp, Assistant United States Attorney
         Thomas McFarland, Assistant United States Attorney

**SPATT, District Judge**.

      This case was commenced in the Supreme Court of the State of New York, County of Suffolk, on or about February 7, 2012.  The Plaintiff, a supervisory-level United States Postal Service ("USPS") employee, seeks damages arising from alleged defamatory statements made by the Defendant Norma Herbst, a USPS clerk, to USPS management, concerning the Plaintiff's work habits and the manner in which he supervises his employees.

      On April 13, 2012, pursuant to the authority vested in the United States Attorneys' Office by the Attorney General under 28 C.F.R. § 15.3, Assistant United States Attorney James H. Knapp certified that, on the basis of the information available with respect to the defamation, the Defendant Norma Herbst was acting within the scope of her employment as an employee of the USPS.  Therefore, the United States of America was substituted as a party Defendant pursuant to 28 U.S.C. § 2679(d)(1), and the action was removed to this federal court.

      On May 25, 2012, the Government filed a stipulation to substitute the United States of America as the sole defendant and to dismiss the third-party complaint.  The Plaintiff opposes this substitution.  In letters to this Court dated May 30, 2012 and September 7, 2012, the Plaintiff denies that Herbst's defamatory statements arose out of her employment with the USPS. Accordingly, the Plaintiff requested a conference with this Court to establish a briefing schedule on the issue, as well as to conduct discovery related to the scope-of-employment question.

On November 19, 2012, the Court held a conference with the parties. At that time, the Court permitted limited discovery solely with regard to the scope-of-employment question—namely the deposition of the Defendant Norma Herbst and the production of certain time records—and set a hearing for January 2, 2013. At the hearing on January 2, 2013, the Court heard oral argument from all counsel and reserved decision on the scope-of-employment issue.

Under the Federal Torts Claims Act ("FTCA"), a plaintiff's exclusive remedy for nonconstitutional torts committed by federal employees in their official capacity is a lawsuit against the United States. See 28 U.S.C. § 2679(b)(1); Castro v. United States, 34 F.3d 106, 110 (2d Cir. 1994) ("a claimant's exclusive remedy for nonconstitutional torts by a government employee acting within the scope of his employment is a suit against the government under the FTCA."); accord Sereika v. Patel, 411 F. Supp. 2d 397, 409 (S.D.N.Y. 2006); Dufort v. Burgos, No. 04 Civ. 4940, 2005 WL 2660384, at *4 (E.D.N.Y. Oct. 18, 2005).

When an action is commenced against an individual employee, and not against the United States, "the FTCA provides a mechanism for substituting the United States as a party." Lipkin v. U.S. S.E.C., 468 F. Supp. 2d 614, 622 (S.D.N.Y. 2006). Section 2679 provides: "Upon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment[,] . . . any civil action . . . shall be deemed an action against the United States . . . and the United States shall be substituted as the party defendant." 28 U.S.C. § 2679(d)(1).

In this case, the United States Attorney's Office has certified that Herbst was acting within the scope of her federal employment during the events that gave rise to this lawsuit. Thus, the United States contends that, upon certification, all claims pending against Herbst are deemed to be claims against the United States, so that substitution is appropriate. See 28 U.S.C.

§ 2679(d)(1); see also Osborn v. Haley, 549 U.S. 225, 252, 127 S. Ct. 881, 166 L. Ed. 2d 819 (2007) (noting that upon certification, the action is deemed to be brought against the United States). This substitution "immunizes the governmental employee" and also allows the substituted defendant, the United States, to take advantage of numerous limitations on tort actions based on sovereign immunity that are not available to an individual defendant, such as a right to trial by the court, a two-year federal statute of limitations, the unavailability of punitive damages, and a bar to certain kinds of tort actions, including assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights. McHugh v. Univ. of Vermont, 966 F.2d 67, 71 (2d Cir. 1992), abrogated on other grounds by Osborn, 549 U.S. at 225, 127 S. Ct. 881).

However, this certification by the Government is "not the final word". Gutierrez de Martinez v. Lamagno, 515 U.S. 417, 432, 115 S. Ct. 2227, 2235, 132 L. Ed. 2d 375 (1995). The Supreme Court has held that "the Attorney General's certification that a federal employee was acting within the scope of his employment—a certification the executive official, in cases of the kind at issue, has a compelling interest to grant—does not conclusively establish as correct the substitution of the United States as defendant in place of the employee." Id., 515 U.S. at 434, 115 S. Ct. at 2236. Rather, this determination only conclusively governs for purposes of removing a state court action to federal court.

Thus, certifications are judicially reviewable, but "only if a plaintiff 'allege[s] with particularity facts relevant to the scope-of-employment issue.'" K.R. ex rel. Perez v. Silverman, No. 08 Civ. 2192, 2009 WL 2959580, at *4 (E.D.N.Y. Aug. 13, 2009) (quoting McHugh v. Univ. of Vermont, 966 F.2d 67, 72–74 (2d Cir. 1992), overruled on other grounds by Osborn,

549 U.S. at 247.).  The plaintiff "bears[s] the burden of showing that the certification was improper."  Lipkin v. U.S. Sec. & Exchange Comm., 468 F. Supp. 2d 614, 623 (S.D.N.Y. 2006).

In conducting a *de novo* review of a scope-of-employment certification, "the court applies state law principles pertaining to when intentional tortious conduct falls within the scope of a party's employment."  Asto v. Mirandona, 372 F. Supp. 2d 702, 706–07 (E.D.N.Y. 2005).  The court must view the tortious conduct in the light most favorable to plaintiff, so that "the government may not deny that acts were within the scope of employment by denying that the acts occurred."  McHugh, 966 F.2d at 74.  However, the court may make its own findings of fact with respect to the "context of the alleged acts that is relevant to the scope of employment issue" and, in so doing, may rely on evidence outside the pleadings and conduct an evidentiary hearing when necessary.  Id.

Under New York law, "[t]here is no single mechanical test to determine whether at a particular moment an employee is engaged in the employer's business . . . but decisional law has yielded various formulations, which are instructive."  Rausman v. Baugh, 248 A.D.2d 8, 682 N.Y.S.2d 42 (2d Dep't 1998).  One formulation asks whether the employee's act—here, alleged defamation—fell within the direction and control of the employer.  See Johnson v. Daily News, 34 N.Y.2d 33, 356 N.Y.S.2d 1, 312 N.E.2d 148 (1974).  Another interpretation looks at whether the employee's act was in furtherance of the employer's interests.  Sims v. Bergamo, 3 N.Y.2d 531, 535, 169 N.Y.S.2d 449, 147 N.E.2d 1 (1957).  One treatise focuses on whether the acts are "so closely connected" with what the employee was hired to do, and "so fairly and reasonably incidental to it, that they may be regarded as methods, even though quite improper ones, of carrying out the objectives of the employment"?  Prosser and Keeton, Torts § 70, at 502 (5th ed.).  An additional formulation states that an act is considered within the scope of employment

5

if it "was done while the servant was doing his master's work, no matter how irregularly, or with what disregard of instructions."  Riviello v. Waldron, 47 N.Y.2d 297, 302, 418 N.Y.S.2d 300, 391 N.E.2d 1278 (1979) (citation omitted); see also Pizutto v. County of Nassau, 239 F.Supp.2d 301, 313 (E.D.N.Y. 2003).

Among the factors a court should weigh are: "the connection between the time, place, and occasion for the act; the history of the relationship between employer and employee as spelled out in actual practice; whether the act is one commonly done by such an employee; the extent of departure from normal methods of performance; and whether the specific act was one the employer could reasonably have anticipated."  Riviello, 47 N.Y.2d at 303; see also Reynolds, 927 F. Supp. at 95.  Only the general type of conduct, not the specific act, need have been within an employer's reasonable expectation.  Riviello, 47 N.Y.2d at 304.  Other courts have identified the following factors as important to the inquiry: (1) whether the employee's act fell within the discretion and control of the employer; (2) whether the employee acted under the express or implied authority of the employer; (3) whether the employee's act was in furtherance of the employer's interests; (4) whether the employee's acts were in the discharge of duty to the employer; (5) whether the act was in execution of the employer's orders or part of the work assigned by the employer; and (6) whether the acts were so closely connected with what the employee was hired to do, and so fairly and reasonably incidental to it, that they may be regarded as methods, even though quite improper ones, of carrying out the objectives of employment.

An analysis undertaken by the New York State Appellate Division, Second Department, on this precise issue highlights the relevant inquiry:

> In the context of the case before us, Baugh's statements were simply not made in the "scope of employment".  In accusing the plaintiff of sexual harassment, Baugh may have been availing herself of company procedures but was not carrying out a *duty* to

> the employer.  She was free to make the accusation or not; she was under no orders to make the accusation.  Moreover, she was under no legal duty to complain . . .
>
> The grocery clerk who drops the lettuce leaves on which a customer slips was not paid to drop the lettuce, but was indeed paid to put it on the shelf, just as the bus driver who negligently causes an accident was not paid to injure anyone but was indeed paid to drive.  In contrast, Baugh, as a social worker, was not hired for the purpose of making allegations of alleged sexual harassment, let alone defamatory ones, and it was certainly not a part of her job description.

Rausman v. Baugh, 248 A.D.2d 8, 682 N.Y.S.2d 42 (2d Dep't 1998).

Invoking the above formulations of the scope of employment tests and based upon the only evidence submitted by the Plaintiff to meet his burden—the deposition of the Defendant Norma Herbst—the Court finds that the alleged defamatory statements were made by the Defendant in the scope of her employment.  A close reading of the deposition transcript fortifies this conclusion.

During Herbst's deposition, the Plaintiff's counsel questioned her extensively about her job duties, statements she made about the Defendant and to whom, and specifically whether she made any comments about Catania having stolen gasoline from the postal facility and whether he was sleeping on the job.  While it is true that counsel for Herbst strenuously objected to portions of the questioning, in the end Herbst largely answered every question posed to her by the Plaintiff's counsel, except for whether she on certain medications, which this Court ruled was irrelevant to the scope of employment issue.

As to the evidence before the Court, Herbst stated she was a general clerk in the Vehicle Maintenance Facility for the USPS.  She testified that on two to three occasions where she had a 5:00am start time, she arrived in her office to find the Plaintiff Catania asleep, "the shades were drawn, his feet were on the desk, he was curled up with a coat over him." (Dep. at 34.)  In this

7

regard, she made complaints to management that Catania was sleeping on the job.  (Dep. at 38.)
Herbst testified that she likely complained to her direct supervisor, Kenneth Filbry (phonetic).
(Dep. at 40 ("I'm sure I would have said something to him, because he was my supervisor,
yes.").)  She also complained about the sleeping to her manager at the time, Richard Pokowitz.
(Dep. at 94.)  Later in her deposition, she explained that it was possible she did not herself
witness Catania sleeping but that it was "common knowledge".  (Dep. at 164–65.)  Regardless,
she made a complaint to certain supervisors and management regarding what she believed to be
improper conduct by another employee, namely her supervisor, the Plaintiff Catania.

In addition, Herbst made complaints to certain postal employees accusing Catania as well
as others of fraud and mismanagement in or around 2008.  (Dep. at 84–85.)  She affirmed in her
deposition that she has been complaining about suspected fraud since she began her position with
USPS.  Finally, Herbst also testified that she complained to her supervisor and the Inspection
Service that Catania was stealing fuel from the USPS in 2007 or 2008.  (Dep. at 48, 50–51.)
Herbst characterizes herself as a "whistleblower" and testified that this was "common
knowledge."  (Dep. at 68.)

There is no question that Herbst was not Catania's supervisor, and that it was not part of
her specific job duties to oversee his job performance.  Rather, she described her express
responsibilities as the inputting of works orders, fuel and oil distribution, the reconciling of
timecard hours to work order hours, and filing.  However, in this case, Herbst testified that it was
"[p]art of [her] job description [to] report[] any fraud that [she] thought was going on. . . . that
was in the scope of [her] job duty."  (Dep. at 161.)  She clearly understood that it was part of her
duties to report to management whenever she became of aware of misconduct by other
employees, even if this was not explicitly included in her job description.  She complained to

8

those she thought would rectify the situation. (Dep. at 125.)  Of importance, the situations here involved employment duties with the United States Postal Service.  The complaints made by the Defendant Herbst concerned stealing from the United States—both theft of time, when Catania was allegedly sleeping while on the job, and theft of fuel, when Catania was allegedly siphoning gasoline from government postal trucks.  These are serious allegations that if suspected by an employee, should be reported to the USPS in the course of that employee's duties.

In this particular case, Herbt's whistleblowing was done in the course of work for the USPS, no matter that it was done in an irregular fashion and that it was done involving the disregard of instructions.  Riviello v. Waldron, 47 N.Y.2d 297, 302, 418 N.Y.S.2d 300, 302, 391 N.E.2d 1278 (1979).  Herbst's complaints to various supervisors and management to expose Catania's alleged improprieties appears to have been done in furtherance of her employer's interests—here the USPS—as well as in the discharge of her duty to her employer.  See Asto v. Mirandona, 372 F. Supp. 2d 702, 707 (E.D.N.Y. 2005) (finding workplace allegations regarding another employee's "pilfering" of objects from detainees' baggage would be within the scope of the complainer's employment, because it would have been related to the undercover investigation of the employee and relevant to the complainer's determination as to whether the employee should continue to have access to the secured area).  There is no evidence submitted by the Plaintiff to demonstrate that the history of the relationship between Herbst and USPS as spelled out in actual practice dictates otherwise, or whether the complaints departed from Herbt's normal methods of performance.

Moreover, the Court finds that an employee may have the implied authority of an employer to report wrongdoing on the job directly involving the USPS, and that complaints of this nature under the circumstances of this case are acts that an employer could reasonably have

anticipated.  While there is some dispute over whether Catania actually stole fuel from the

facility, the ultimate truth of those statements has no bearing on the scope-of-employment issue,

assuming it does not demonstrate personal animosity.  See Astro, 372 F. Supp. at 707

("Furthermore, it is certainly foreseeable that Mirandona, in responding to the problem created

by the stolen items, would have to make statements concerning his perception of the likely

culpability of the suspects under investigation. Even if the statements reflected an incorrect

assessment of Plaintiff's involvement, that would not place the statements outside the scope of

his employment, as under New York law an employee's actions need only be generally

foreseeable to the employer to fall within the scope of employment.").

 While an employee is not acting within the scope of employment if she "was acting

solely for personal motives unrelated to the furtherance of the employer's business," White v.

Alkoutayni, 18 A.D.3d 540, 541, 794 N.Y.S.2d 667 (2d Dep't 2005), the Plaintiff has not

provided any evidence that the Defendant was acting in such a manner.  See Lipkin v. U.S.

S.E.C., 468 F. Supp. 2d 614, 623 (S.D.N.Y. 2006); Bello v. U.S., 93 Fed App'x 288, 291 (2d Cir.

2004) ("New York law holds that a defendant does not act within the scope of his employment

when he engages in tortious conduct for personal reasons separate and distinct from the interests

of his employer, particularly when the conduct involves acts not commonly done by those in his

position").  The Plaintiff has alleged through the course of this dispute that Herbst's

whistleblowing only came after her husband was disciplined as a former employee of the USPS.

However, Herbst vehemently denied this at her deposition.  (Dep. at 45.)  When asked whether

she believed that Catania should be fired from the USPS, Herbst responded that she "believe[d]

he is not doing the job he is paid to do."  (Dep. at 116.)  Nevertheless, this is insufficient proof to

demonstrate personal animosity, and it is the Plaintiff's burden to bear.  See Bello, 93 Fed App'x

at 291 ("In the course of investigating the charges pleaded in the harassment complaint, Lizana may well have formed a negative opinion of Bello, but the fact that such an opinion informed his subsequent performance of an assigned task . . . does not transform that professional task into a personal one."). "Without some present or potential evidence of malice, there is no plausible reason to hold that [Herbst's] alleged defamatory statements were made outside the scope of [her] employment." Asto v. Mirandona, 372 F. Supp. 2d 702, 709 (E.D.N.Y. 2005).

In sum, the Court finds that the actions of Norma Herbst, complained of by the Plaintiff as the basis for this lawsuit, were done by her within the scope of her employment with the USPS. Thus, the United States should be substituted as the proper defendant with respect to the Plaintiff's claims that sound in the tort of defamation. As the record clearly indicates that any allegedly defamatory statements made by Herbst were made within the scope of her employment with the federal government, the certification by the United States Attorney must be upheld, and the United States is properly substituted as the party defendant.

Further, although under the FTCA the United States has consented to be sued for certain tortious acts, the FTCA's waiver of sovereign immunity does not apply to defamation claims which are explicitly excluded under the statute. See 28 U.S.C. § 2680(h)); see also Siegert v. Gilley, 500 U.S. 226, 233-234, 111 S. Ct. 1789, 114 L. Ed. 2d 277 (1991) (noting that a defamation suit against the United States is not allowed under the Federal Tort Claims Act "in the light of the exemption in [the FTCA] for claims based on defamation."). Accordingly, because the FTCA bars defamation claims for money damages against the United States—which the Plaintiff has acknowledged on the record—this action must be dismissed in its entirety. See Baggio v. Lombardi, 726 F. Supp. 922, 925 (E.D.N.Y. 1989) ("If such a determination is made, it would appear that plaintiffs' complaint, at the very least on the defamation claim . . . , must be

11

dismissed due to the fact that the United States is immune from suit for such causes of action. ").

This result must obtain even though it leaves the plaintiff with no available defendant against

whom Catania may pursue his claims of defamation.  See B & A Marine Co., Inc. v. Am.

Foreign Shipping Co., Inc., 23 F.3d 709, 715 (2d Cir. 1994) (plaintiff "is precluded from

asserting a libel action against [individual defendants] based on a tort they may have committed

as agents or employees of the Government within the scope of their employment,

notwithstanding that the United States is also immune") (citing United States v. Smith, 499 U.S.

160, 111 S. Ct. 1180, 113 L. Ed. 2d 134 (1991)).

 The Clerk of the Court is respectfully directed to mark this case as closed.

**SO ORDERED.**
Dated: Central Islip, New York
January 4, 2013


          */s/ Arthur D. Spatt*
          ARTHUR D. SPATT
          United States District Judge